UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SIDNEY COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | 14-CV-3402 |
| | ) | |
| v. | ) | |
| | ) | |
| ARAMARK CORRECTIONAL SERVICES, INC., and STEVE DREDGE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He pursues a constitutional claim that the facility provided him inedible food by serving mechanically separated chicken which arrived in boxes marked "for further processing only." Before the Court are Defendants' motions for summary judgment. For the reasons explained below, the motions are denied.

## Background

On December 20, 2010, four residents detained in the Rushville Treatment and Detention Center filed a purported class action challenging, as is relevant to this case, the serving of mechanically separated chicken from boxes marked "for further processing only." Smego v. Ill. Dept. of Human Serv., 10cv3334 (C.D. Ill.). On June 2, 2011, the plaintiffs' motion for class certification in that case was denied because they were pro se. (10cv3334, d/e 43, p. 2.) A flood ensued of over 60 additional cases filed by some 80 other residents regarding the same issues.

The additional plaintiffs were joined into the original case, and Plaintiff Richard Smego was designated as spokesperson. Id. d/e 336. The Court was eventually able to recruit pro bono counsel, but only for the plaintiffs in the original case. The claims of the rest of the plaintiffs were severed and stayed, with the hopes that the resolution of the original case might resolve the other cases or help guide the Court in resolving the other cases.

Summary judgment was denied in the original case, and then the original case settled in July 2014. Part of the settlement was an

agreement that the mechanically separated chicken labeled "for further processing only" would no longer be served at the facility.

After the original case settled, the plaintiffs in the other cases were given an opportunity to file an amended complaint if they still wished to proceed with their claims. Six of those cases remain, including this one, which is now at the summary judgment stage.

**Legal Standard Applicable to Civil Detainee's Claim**

The Fourteenth Amendment due process clause governs rather than the Eighth Amendment because Plaintiff is a civil detainee, not a prisoner serving a sentence. The Supreme Court stated in Youngberg v. Romeo that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. 307, 322 (1982). This difference was reiterated by the Seventh Circuit in Hughes v. Scott, 816 F.3d 955, 956 (7th Cir. 2016); s*ee also* McGee v. Adams, 721 F.3d 474, 480 (7th Cir. 2013)(citing Youngberg but noting that "the Supreme Court has not determined how much additional protection civil detainees are entitled to beyond the protections afforded by the Eighth Amendment bar on cruel and unusual

punishment."); Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 664 (7th Cir. 2012)( "[T]he Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees.").

In application, the Fourteenth Amendment standard thus far appears indistinguishable from the Eighth Amendment standard on conditions of confinement claims. For example, the Seventh Circuit has stated that a conditions of confinement claim by a civil detainee requires an objectively serious deprivation and deliberate indifference by the defendant. Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008). This is the same standard governing an Eighth Amendment conditions of confinement claim by a prisoner. The Seventh Circuit more recently confirmed in Smith v. Dart, 803 F.3d 304, 310 (7th Cir. 2015), that "[w]e have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment test."

However, the Seventh Circuit has also recently acknowledged the difficulty of defining the legal standard applicable to detainees, noting the "shifting sands of present day case authority." Werner v. Wall, 836 F.3d 751, 759 (7th Cir. 2016). In Smith v. Dart, even though confirming the appropriateness of relying on Eighth Amendment cases, the Seventh Circuit stated in dicta that the subjective element requires a "'purposeful, a knowing, or a possibly reckless state of mind,'" arguably a lower hurdle than deliberate indifference. 803 F.3d 304 n. 2 (quoted cite omitted). That dicta was ultimately referring to the Supreme Court case of Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015), which held that a defendant's subjective state of mind in a pretrial detainee's excessive force claim was relevant only to the extent that the defendant's actions were "purposeful or knowing." After Kingsley, though, the Seventh Circuit has continued to rely on the deliberate indifference standard to pretrial detainees' claims for lack of medical care. *See, e.g.,* Daniel v. Cook County, 833 F.3d 728, 732-33 (2016).

At this point, the Court can avoid trying to define what greater protection is afforded civil detainees as compared to prisoners.

Plaintiff's claim survives summary judgment even under the Eighth Amendment standard. Avoidance may no longer be possible when faced with how the jury should be instructed, but that is a discussion for another day.

## Discussion

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

Viewing the evidence in the light most favorable to Plaintiff means accepting his version of events, if his version is based on his personal knowledge. Plaintiff testified in his deposition that he ate the mechanically separated chicken marked "for further processing only" from the middle of 2010, when Aramark purportedly began serving the product, until May 2012, when Plaintiff became so sick that he was hospitalized. (Pl.'s Dep. 50-56.) When he ate the product he suffered "diarrhea, nausea, vomiting, and upset stomach." (Pl.'s Dep. p. 53). In May 2012, the problem became

worse, according to Plaintiff, because Plaintiff was placed in special management and was not able to shop at the commissary for other food. Plaintiff had to eat what was provided, which meant eating mechanically separated chicken labeled "for further processing only" from four to six times per week. (Pl.'s Dep. p. 55.) Plaintiff saw Dr. Lochard twice over the next two weeks because Plaintiff felt ill. Plaintiff continued to feel worse each day for about two weeks until one day, 15 minutes after eating the mechanically separated chicken for further processing only, he "could hardly stand up in my room. I was vomiting. I had diarrhea. I was sick and I had to go to the hospital. [The doctor] had put me on a liquid diet to clean me out. He had to give me a shot and keep me in the hospital." (Pl.'s Dep. p. 54.) After his hospital stay, Plaintiff never ate the mechanically separated chicken for further processing again and his gastrointestinal problems ceased. (Pl.'s Dep. 76.) Plaintiff has not been sick since he stopped eating the product. Id.

"The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'"

Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)(*quoting* French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985) (citation omitted).

Defendants argue that the federal regulations governing mechanically separated chicken do not prohibit the serving of meals containing mechanically separated chicken. They are correct. Further, Plaintiff does not dispute Defendants' evidence that mechanically separated chicken is safe to eat (if properly prepared) and that many food products sold today contain mechanically separated chicken. (Arrasmith Aff. para. 11)("Approximately 1.5 billion pounds of mechanically separated chicken is produced per year for human consumption.")

However, federal regulations require that mechanically separated chicken used in food products does not exceed certain bone particle size and calcium content limits. 29 C.F.R. § 381.173(b)-(c). Mechanically separated chicken that exceeds those limits must be labeled as "mechanically separated chicken for further processing" and "used only in producing poultry extractives, including fats, stocks, and broths." 29 C.F.R. § 381.173(e).

As discussed in the Court's order on summary judgment in the original case, the label "further processing only" on the boxes

containing the mechanically separated chicken, coupled with 29 C.F.R. §381.173(e), together create an inference in Plaintiff's favor that the chicken so marked should have been used only for soup stock and like products.

Defendants' evidence allows a competing inference, but that only demonstrates a factual dispute for the jury to decide. For example, Dr. Scott Stillwell, the Vice President of Food Safety and Quality Assurance at Tyson Foods, Inc., avers that the mechanically separated chicken sold to Aramark "for approximately nine years" met the standards under 9 C.F.R. 381.173(b) and (c). He avers that the purpose of the "for further processing only" label was to warn the end user that raw chicken must be handled, stored, and cooked properly, and that the USDA has never required a "for further processing" label for any mechanically separated chicken sold by Tyson to Aramark for use at Rushville. (Stillwell Aff. ¶¶ 7-12.)

A reasonable juror could wonder why Tyson would label all its mechanically separated chicken "for further processing only" when that term has a special meaning under § 381.173(e). Did Tyson sell mechanically separated chicken which required the label "for further processing" under §381.173(e)? If so, how was that product

labeled? Dr. Stillwell's affidavit creates but does not compel an inference in Defendants' favor.

Defendants also offer the affidavit of Dr. Regenstein, a Professor of Food Science, but Dr. Regenstein offers only the unremarkable conclusion that mechanically separated chicken, when properly prepared, is safe to eat. (Regenstein Aff. para. 6.) He does not address if mechanically separated chicken falling under § 381.173(e) could cause gastrointestinal distress.

The Director of Nutrition & Operational Support Services for Aramark (West Region), Cynthia Irizarry, avers that the meal plan at Rushville is designed to exceed the minimum caloric and nutritional requirements to ensure that residents' nutritional and caloric needs are met, even if the residents choose not to eat part of a meal. (Irizarry Aff. 16.) She avers that residents who "refused to consume dishes containing MSC [] would still receive an average of between 2586 and 2596 calories and 83.7 grams of protein per day." (Irizarry Aff. 18.) Even so, a reasonable jury could still find that regularly providing food that made Plaintiff physically ill—vomiting, and diarrhea— was an objectively serious deprivation. Prude v. Clark, 675 F.3d 732, 735 (7th Cir. 2012)("sickening food" (nutriloaf)

which caused "substantial weight loss, vomiting, stomach pains, and maybe an anal fissure . . . would violate the Eighth Amendment.)

Defendant Dredge, Aramark's Food Services Director at Rushville, avers that he ate meals at Rushville containing the chicken marked "for further processing only" without problem and saw other employees do so, too. (Dredge Aff. para. 22.) Plaintiff, in contrast, maintains that he got sick when he ate the mechanically separated chicken labeled "for further processing only." Both assertions could be true—perhaps some tolerated this food without problem while others could not. In any event, the Court must accept Plaintiff's version to the extent that version is based on his personal knowledge and experience. Plaintiff has personal knowledge that he suffered diarrhea, vomiting, nausea, and feeling ill when he ate the mechanically separated chicken marked "for further processing only." He also has personal knowledge that those problems stopped after he stopped eating the product.

Defendants argue that Plaintiff needs a medical expert to prove that his symptoms were caused by the mechanically separated chicken labeled "for further processing only." The Court disagrees.

Whether food makes a person sick is within a layperson's experience. Experiencing diarrhea every time one eats a certain food is a good clue. Plaintiff's testimony that he experienced the symptoms when he ate the product and no longer experienced the symptoms when he stopped eating the product is enough to allow an inference of causation.

Defendants argue that causation is particularly hard to sort out because Plaintiff has Crohn's disease. However, the idea that Plaintiff has Crohn's disease is based on Plaintiff's own testimony that Plaintiff saw that diagnosis in his IDOC medical records. No one ever told Plaintiff that he had Crohn's disease. (Pl.'s Dep. 61-62, 67-68.) Defendants did not file any medical records. The medical records that are in the docket were filed by Plaintiff and are illegible. Further, even if Plaintiff has Crohn's disease, his symptoms still stopped after he stopped eating the mechanically separated chicken marked "for further processing only."

Thus, a jury could rationally find that Plaintiff suffered an objectively serious deprivation caused by the mechanically separated chicken labeled "for further processing only." A jury could also rationally find that Defendants were deliberately

indifferent to that deprivation. Plaintiff testified that he filed two grievances to Sandra Simpson, the grievance examiner. (Pl.'s Dep. 59-61.) Defendant Dredge does not recall seeing those grievances, but complaints about the food service were to be forwarded to the Food Service Director, Defendant Dredge, pursuant to the contract between Aramark and the Illinois Department of Human Services. (d/e 31-2, p. 14.) This allows an inference that Defendants were made aware of the many complaints by residents. Further, even if Defendants never learned of Plaintiff's complaints, a jury could rationally find that Defendants had notice of the problem once served with the original lawsuit in early 2011. Despite that knowledge, they continued serving the mechanically separated chicken marked "for further processing only" until 2014.

Defendant Dredge argues that he cannot be held liable because of his supervisory position. But Dredge is not being sued because he is a supervisor. He is being sued because, looking at the record in the light most favorable to Plaintiff, Defendant Dredge directly participated in the violation of Plaintiff's constitutional rights by failing to take reasonable action despite knowing that the mechanically separated chicken for further processing was making

residents ill.  Inferences arise in Dredge's favor, too, but this is the summary judgment stage.

Aramark argues that Plaintiff has not proven that a policy attributable to Aramark caused Plaintiff's deprivation.  Aramark was responsible for providing the meals, including determining and ordering the ingredients to make those meals.  Aramark officials approved the use of the mechanically separated chicken labeled "for further processing only" and continued that approval after the residents complained the product made them sick.  That is the policy and practice at issue.

Defendants reassert their argument that they are not state actors.  The Court remains of the opinion that they are state actors because they have assumed an essential state function.  Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009); Jubeh v. Dart, 2011 WL 6010267 *2(not published in federal reporter)(N.D. Ill. 2011)(rejecting Aramark's state actor argument and collecting cases).

The Court does agree with Defendants that injunctive relief is no longer available since the mechanically separated chicken marked "for further processing only" is no longer being served.

## Conclusion

The Court must draw reasonable inferences in Plaintiff's favor at this stage and may not weigh the strength of competing inferences. Stokes v. Board of Educ. of the City of Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.") Plaintiff's own testimony allows a reasonable inference that he suffered an objectively serious deprivation. Plaintiff's grievances, Defendant Dredge's position as Food Service Director, the original lawsuit filed in 2010, Plaintiff's joinder in that original lawsuit, and Defendants' refusal to stop serving the mechanically separated chicken labeled "for further processing only" allow a reasonable inference of deliberate indifference. Summary judgment is denied. A trial will scheduled, if necessary, after the Magistrate Judge holds a settlement conference.

**THEREFORE, IT IS ORDERED THAT Defendants' motion for summary judgment is denied (30). This case is referred to**

**the Magistrate Judge for a settlement conference.  The clerk is directed to notify the Magistrate Judge of the referral.**


ENTER: 2/16/2017
FOR THE COURT:

                                              **s/Sue E. Myerscough**
                                              SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE